Mara E. Rosales (SBN: 104844)
mrosales@meyersnave.com
Joseph M. Quinn (SBN: 171898)
jquinn@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
575 Market Street, Suite 2600
San Francisco, California  94105
Telephone: (415) 421-3711
Facsimile: (415) 421-3767

Attorneys for Defendants
CITY OF OAKLAND and
PORT OF OAKLAND

David L. Alexander, Port Attorney (SBN: 59069)
dalexand@portoakland.com
Danny Wei Wan, Deputy Port Attorney (SBN: 168323)
dwan@portoakland.com
PORT OF OAKLAND
530 Water Street
Oakland, California 94607
Telephone: (510) 627-1136
Facsimile: (510) 444-2096

Attorneys for Defendant
PORT OF OAKLAND

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL RIGHTS FOUNDATION, a non-profit, public benefit corporation,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND, CALIFORNIA, a political subdivision of the State of California and the PORT OF OAKLAND, a public entity,<br><br>Defendants. | CASE NO. CV 07-6058 (CRB)<br><br>**DEFENDANTS' OPPOSITION TO MOTION TO REMAND AND REQUEST FOR ATTORNEY'S FEES**<br><br>Date:          January 25, 2008<br>Time:          10:00 a.m.<br>Courtroom:   8, 19th Floor<br><br>The Honorable Charles R. Breyer<br><br>Complaint Filed:  July 6, 2007 |

1

**TABLE CONTENTS**

2    I.  INTRODUCTION AND SUMMARY OF ARGUMENT .......................................................... 1

3    II. STATEMENT OF RELEVANT FACTS ...................................................................... 2

4        STANDARD OF REVIEW .................................................................................. 4

5        A.  Removal...................................................................................................... 4

6        B.  Remand .................................................................................................... 5

7    III. LEGAL ARGUMENT ............................................................................................. 5

8        A.      DEFENDANTS' REMOVAL IS PROCEDURALLY CORRECT
                 AND TIMELY ............................................................................................ 5
9

10       B.      DEFENDANTS PROPERLY REMOVED UNDER FEDERAL QUESTION
                 JURISDICTION ........................................................................................ 9

11               1.      Federal Law Recognizes that State Agency Actions Performed
                         Under Federal Mandate Present Federal Questions Appropriate for
12                       Federal Court Adjudication ........................................................... 10

13               2.      Proposition 209, Read as Prohibiting the Port's Compliance with 49
                         CFR Part 23, is Preempted, and thus Presents a Federal Claim.... 13
14

15       C.      PLAINTIFF'S LACK OF ARTICLE III STANDING DOES NOT DEFEAT
                 REMOVAL BASED UPON FEDERAL QUESTIONS ...................................... 15
16

17       D.      REMAND TO STATE COURT IS FUTILE...................................................... 16

18               1.      State Taxpayer Standing.............................................................. 17

19               2.      State Citizen Suit Standing.......................................................... 19

20       E.      PLAINTIFF IS NOT ENTITLED TO ATTORNEY'S FEES ............................. 22

21   IV. CONCLUSION ................................................................................................... 24

22

23

24

25

26

27

28

i

1

<strong>TABLE OF AUTHORITIES</strong>

2

3

Adarand Construction, Inc. v. Pena,
        515 U.S. 200 (1995) ....................................................................... 7, 8, 11

4

Ansley v. Ameriquest Mortg. Co.,
        340 F.3d 858, 862 (9th Cir.2003)................................................... 13, 14

5

6

Bell v. City of Kellogg,
        922 F.2d 1418, 1422 (9th Cir. 1991)................................................ 5, 17

7

City and County of San Francisco v. Western Air Lines, Inc.,
        204 Cal.App.2d 105, 120 (1962).......................................................... 20

8

9

City of Richmond v. J.A. Croson Co.,
        488 U.S. 469 (1989) .......................................................................... 1, 7

10

Clio Convalescent Center v. Michigan Dept. of Consumer and Industry Services,
        66 F. Supp. 2d 875, 877 (E.D. Mich. 1999) ......................................... 11

11

12

Connerly v. State Personnel Bd.,
        92 Cal.App.4th 16, 29, (2001) ............................................................. 19

13

14

Coral Construction, Inc. v. City and County of San Francisco, et al.,
        116 Cal.App.4th 6, 26-27 (2004) ......................................................... 22

15

Cornelius v. Los Angeles Metropolitan Transp. Authority,
        49 Cal.App.4th 1761 (1996)........................................................... 18, 19

16

17

Curtis v. Nevada Bonding Corp.,
        53 F.3d 1023 (9th Cir. 1995)................................................................ 16

18

Four T's Inc. v. Little Rock Municipal Airport,
        108 F.3d 909, 915 (8th Cir. 1997)........................................................ 21

19

20

Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California,
        463 U.S. 1, 22 (1983) ........................................................................ 4, 6

21

22

Gateway Five, LLC v. In Re Price, Slip Copy,
        2007 WL 4260810 (E.D. Tenn. 2007). ................................................. 11

23

Gaus v. Miles, Inc.,
        980 F.2d 564, 566 (9th Cir. 1992).......................................................... 4

24

25

Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg,
        545 U.S. 308, 314 (2005) ................................................................... 4, 9

26

Gully v. First Nat'l Bank,
        299 U.S. 109 (1936) .............................................................................. 5

27

28

Harris v. Bankers Life & Cas. Co.,
        425 F.3d 689, 694 (9th Cir. 2005)........................................................ 6, 9

Declaration of Mara E. Rosales In Support of Defendants'        [CV07-06058 (CRB)]
Opposition to Motion to Remand

Humane Soc. of U.S v. State Bd. of Equalization,
    152 Cal.App.4th 349, 361 (2007)......................................................... 17

Hunter v. United Van Lines,
    746 F.2d 635 (9th Cir. 1984).............................................................. 15

Lee v. American Nat'l Ins. Co.,
    260 F.3d 997, 1005 (9th Cir. 2001) .............................................. 15, 16

Magnin v. Teledyne Continental Motors,
    91 F.3d 1424 (11th Cir. 1996)............................................................ 12

Martin v. Franklin Capital Corp.
    546 U.S. 132 (2005) ........................................................................... 23

McDonald v. Stockton Metropolitan Transit District,
    36 Cal.App.3d 436, 442 (1973)..................................................... 20, 21

National Audobon Soc. v. Dept. Water & Power,
    496 F. Supp. 499 (D.C. Cal. 1980).................................................... 11

Paduano v. Yamashita Kisen Kabushiki Kaisha,
    221 F.2d 615, 618 (2d Cir. 1955)...................................................... 15

Toumajian v. Frailey,
    135 F.3d 648, 653 (9th Cir.1998)...................................................... 13

Transdyn v. City and County of San Francisco,
    72 Cal.App.4th 746, 750-751 (1999) ................................................ 20

United States v. Cotton,
    5353 U.S. 625, 630 (2002) ................................................................. 11

Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,
    454 U.S. 464, 471-76 (1982)............................................................. 16

Waste Management of Alameda County, Inc. v. County of Alameda,
    79 Cal.App.4th 1223, 1232-1239 ................................................ 19, 20

Western States Paving Co., Inc. v. Washington State Dep't of Transp.,
    407 F.3d 983 (9th Cir. 2005)......................................................... 1, 7, 8

**STATUTES**

28 U.S.C. § 1331 ...................................................................................... 15

28 U.S.C. § 1441(b) .............................................................................. 4, 5, 13

28 U.S.C. § 1447(c)....................................................................... 15, 16, 17, 23

28 U.S.C. § 1653 ...................................................................................... 11

49 U.S.C. § 47107(e)........................................................................... passim

iii

California Code of Civil Procedure § 526a ......................................................... 17, 18, 19

**OTHER AUTHORITIES**

California Code of Federal Regulations
     49 Part 23 ........................................................................................... passim

California Constitution Article I, Section 31 .......................................................... 1, 2

United States Constitution Article III ......................................................................... 5

Wright & Miller, <u>Federal Practice and Procedure, § 3733</u> .......................................... 11

Declaration of Mara E. Rosales In Support of Defendants'                    [CV07-06058 (CRB)]
Opposition to Motion to Remand

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff American Civil Rights Foundation ("ACRF" or "Plaintiff") seeks an order remanding to state court the subject Complaint challenging Oakland International Airport's compliance with federal statutory and regulatory requirements for the adoption and implementation of the Port of Oakland's Airport Concessions Disadvantaged Business Enterprise Program ("ACDBE Program").   Plaintiff framed its initial pleadings as a state constitutional challenge under California Constitution Article I section 31 (known as "Proposition 209").  The City of Oakland and the Port of Oakland (collectively "Defendants") demurred. In its Opposition, Plaintiff revealed that the crux of its allegations is that the "Defendants' ACDBE Program Fails to Satisfy Federal Requirements" (Plaintiff Opposition to Demurrer at 9) and that the Defendants "have not narrowly tailored their race-conscious measures as required under federal law." Id. at 11. After this revelation in the Plaintiff's brief, Defendants removed this action to federal court based on the federal court's subject-matter jurisdiction over controversies of federal law and regulatory compliance.

In its Opposition to the Demurrer ("Opposition"), Plaintiff explained why it claims a violation of Prop. 209 here: "Defendant's ACDBE Program is not in compliance with DOT [United States Department of Transportation] Regulations" and that the ACDBE Program is not narrowly tailored as required by federal law.  (Opposition, at 6, 9.) Plaintiff copiously cites federal cases that have interpreted the federal Constitution to require the narrow tailoring of race and gender based programs to support its arguments that Defendants' ACDBE Program violates federal law, including City of Richmond v. J.A. Croson Co., 488 U.S. 469 (1989) and Western States Paving Co., Inc. v. Washington State Dep't of Transp., 407 F.3d 983 (9th Cir. 2005).

Therefore, through its Opposition, Plaintiff explained that its claim, though artfully pled as a state law claim in state court, in fact rests exclusively on questions of federal regulatory and constitutional requirements. Defendants' prompt removal was proper.

Following the motion to remand, the parties clarified their respective positions by telephone and correspondence. The two points of agreement are (1) the Complaint on its face does not expressly raise a federal issue; and (2) the Plaintiff's state law claim is based on the notion that

1

the Port of Oakland ("Port") acted without federal constitutional and regulatory authority when it complied with the Federal Aviation Administration's ("FAA") determination that it satisfied the requirements of 49 CFR Part 23.

Stripped to its essence, Plaintiff's lawsuit takes issue with Congressional affirmative action policy, implemented by the US Department of Transportation ("USDOT") and the FAA, and imposed on airport grant recipients. Under any analysis, this action raises substantial and weighty federal issues and questions that are properly and timely before this Court.

Contrary to Plaintiff's arguments, there is no basis to remand the matter to state court. This court has federal-question subject matter jurisdiction, and the state constitutional provision is completely preempted as it may relate to race/gender conscious provisions in airport concession contracts subject to 49 CFR Part 23.  Furthermore, Plaintiff has no standing or a private right of action in either state or federal court to be heard on its disagreement with USDOT policy on airport concessions. Finally, the state law claim is barred by the state statute of limitations.  In the end, Plaintiff lacks standing for its claims in any court and cannot rest its argument for remand to state court based on any such claims of state-court standing.

In light of the above, the Motion to Remand should be denied.

## II.    STATEMENT OF RELEVANT FACTS

Plaintiff's Complaint challenges the Port of Oakland's ACDBE Program.  That program governs and guides the award of public concession contracts at Oakland International Airport. Plaintiff contends that the ACDBE Program discriminates against, and grants preferential treatment to, individual groups on the basis of race, sex, color, ethnicity, or national origin in violation of Article I, section 31 of the California Constitution. ("Section 31" or "Prop. 209"; see Complaint at ¶¶ 22-27.)

Paragraph 9 of the Complaint focuses on Section 31, subsection (e):

> Section 31 contains an exception to its prohibition against race- and sex based discrimination and preferences.  Subdivision (e) of section 31 authorizes race-based governmental action "which must be taken to establish or maintain eligibility for any federal program, where ineligibility would result in a loss of federal funds to the State."  Cal. Const. art. I, § 31(e).  In order for a governmental agency to meet this exception, it "must have substantial evidence that it will lose federal

2

1  funding if it does not use race-based measures and must narrowly
2  tailor those measures to minimize race-based discrimination." *C & C Constr.,* 122 Cal. App. 4th at 298.

3  Defendants demurred to the Complaint in state court, and noted that the Port of Oakland's

4  federal grant agreements with the USDOT and the FAA, carried federal affirmative action

5  requisites--including 49 CFR Part 23. (Demurrer, 12:9-13:1.)  Given these facts, Defendants

6  maintained that Plaintiff was mistaken in its position that Proposition 209 applied and that "the

7  federally mandated ACDBE Program is a 'municipal contracting scheme' which violates the

8  California Constitution." (Demurrer, 13; 1-4, citing to Complaint, ¶ 8.)

9  In its response to Defendants' Demurrer, ACRF addressed for the first time an analysis of

10  equal protection and federal regulatory considerations.  There, Plaintiff asserts as follows:

11  There is no preemption in this case by federal law or the United
12  States Constitution.  First, Article I, section 31, is not preempted by the Equal Protection Clause of the U.S. Constitution. (Coalition for
13  Econ. Equity v. Wilson 122 F.3d 692, 709 (9th Cir. 1997).  Second, the federal Regulations here do not require Defendants to implement
14  race conscious contracting measures without the specific identification of past discrimination, and without narrowly tailoring
15  those measures to the least restrictive means. The DOT Regulations also require the recipient of federal funds to use race-neutral means
16  before resorting to race conscious methods. . . ..[¶] Defendants
17  reliance on mere statistics is inadequate to justify evidence of past discrimination, and their race-conscious measures are not narrowly
18  tailored as described in *Adarand*, *Croson*, or *Western States*.

19  (Opposition, at 12:9-13; 24-26.)

20  In Plaintiff's motion for remand (hereinafter, "Motion"), Plaintiff states that the Complaint

21  alleges only one cause of action, "namely that the ACDBE Program violates Article I, section 31,

22  of the California Constitution". (Motion, at 2:6-8.)  Plaintiff also asserts it "has not stated a federal

23  claim" (Motion, at 4:1-2), insisting instead that, in the demurrer, Defendants raised "the same

24  'federal issues' upon which their current Notice of Removal is based." (Motion, at 5.)

25  The following timeline is undisputed: Plaintiff filed its Complaint for declaratory and

26  injunctive relief in state court on July 6, 2007.  Plaintiff served Defendants on or about August 6,

27  2007.  Defendants timely demurred to the Complaint on September 24, 2007.  Plaintiff responded

28  to the demurrer on November 26, 2007. Defendants removed the case to federal court pursuant to

Defendants Opposition for Motion to Remand and                    [CV07-06058(CRB)]
Request for Attorney's Fees

28 USC 1441(b) ("Section 1441(b)") on November 30, 2007.

**STANDARD OF REVIEW**

      **A.**     **Removal**

A defendant bears the burden of showing that removal was proper by demonstrating the removal was both procedurally correct and that a federal court would have jurisdiction from the outset. <u>Gaus v. Miles, Inc.</u> 980 F.2d 564, 566 (9th Cir. 1992).

Pursuant to Section 1441(b), the timeliness of removal is determined as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Grounds for removal exist when a lawsuit takes in federal questions. Thus, pursuant to Section 1441(b) "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." The conditions for federal question jurisdiction are that the claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg</u>, 545 U.S. 308, 314 (2005).

Even when no federal claim appears on the face of the complaint, the court may still uphold removal once a basis for removal is disclosed and especially if it appears that the complaint has been "artfully pled" to avoid reference to any federal law. <u>Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California</u>, 463 U.S. 1, 22 (1983). Thus, if

4

later pleadings , motion or other paper filed disclose that putative state law claims that involve

issues either completely preempted by federal law or that necessarily implicate a substantial

question of federal law, the court may assume federal-question jurisdiction of the case. However,

under Section 1441(b), a defendant may not remove a case on the basis of a federal defense.

Rather, defendant must show that a federal right is an essential element of the plaintiff's cause of

action. <u>Gully v. First Nat'l Bank</u>, 299 U.S. 109 (1936).

### B.      Remand

Following removal, remand is generally warranted if the district court lacks subject matter

jurisdiction. This is because a case or controversy is left wanting under Article III of the federal

Constitution. USCA Const. Art. 3, § 1 et seq.; 28 USCA § 1447(c); <u>Bell v. City of Kellogg</u>, 922

F.2d 1418, 1422 (9th Cir. 1991). However, where remand of pendent state claims to state court

would be futile, the rationale for state adjudication is lacking because such remand promotes

inefficient use of judicial resources. <u>Id.</u>, at 1424.

### III.      LEGAL ARGUMENT

### A.      DEFENDANTS' REMOVAL IS PROCEDURALLY CORRECT AND TIMELY

Federal removal jurisdiction is an entirely statutorily created right. Under Section

1441(b), a failure to follow the procedural requirements for removal results in a loss of the right to

remove.

Plaintiff disingenuously tries to argue that the 30-day clock for removal started ticking at

the time it filed its Complaint and that Defendants' Demurrer raised federal question issues which

are reiterated in its Notice of Removal. The record is plain, however, that Plaintiff intended its

Complaint to pose only a state cause of action, to avoid the potential for removal. Indeed, ACRF

continues to insist that its Complaint only poses a state claim. As such, the first paragraph of

Subdivision (b) of Section 1441 (removal based on initial pleading) is inapplicable in any analysis

of timeliness, because Plaintiff's initial pleading fails to present facts that support removal.

Ninth Circuit law is clear in this regard that notice of removability under Section 1441(b)

is determined by the "four corners of the applicable pleadings, not through subjective knowledge

1   or a duty to make further inquiry." Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 694 (9th Cir.

2   2005). The relevant test is what the document says, and not what defendants purportedly knew.

3   Thus, the grounds for removal must be "unequivocally clear and certain" to start the 30-day

4   removal period running.  This rule promotes judicial economy and avoids "protective" removal by

5   defendants faced with an equivocal pleading. Id. at 692-693.

6        Accordingly, even if a defendant suspects grounds for removal, the defendant may wait

7   until a subsequent pleading discloses removability and is under no duty to investigate to determine

8   the jurisdictional facts even if the Complaint contains "clues" to removability. Harris, 425 F.3d at

9   694.  When the initial pleading fails plainly to state grounds for removal, a second 30-day period

10  for removal applies.  Section 1441(b). Under these circumstances, "a notice of removal may be

11  filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading,

12  motion, order or other paper from which it may first be ascertained that the case is one which is or

13  has become removable . . .." Id. Hence, even if a case were not removable at the outset, if it is

14  rendered removable by virtue of facts pled in a newly-filed "paper," then the second thirty-day

15  window is in play. Id.  Where grounds for removal are obscured or omitted, or even misstated in

16  the initial pleading, defendants have 30 days to remove from the time a plaintiff's subsequent

17  papers disclose a clear basis such removal. Id.

18       Here, Plaintiff's gambit was clearly to keep its Complaint in state court by studiously

19  avoiding any mention of a federal question which frames the instant controversy.  Artful pleading,

20  however, will not undercut federal question jurisdiction.  Franchise Tax Bd. of State of Cal. v.

21  Construction Laborers Vacation Trust for Southern California, 463 U.S. at 22.  Defendants'

22  Demurrer essentially flushed out Plaintiff's federal claims, when Plaintiff's Opposition to the

23  demurrer revealed its equal protection and federal statutory theories for relief.  While Plaintiff tries

24  to argue that it was only responding to defenses raised by Defendants in this regard, it was

25  Plaintiff, not Defendants, who introduced legal issues, cases and arguments which go to

26  application of equal protection issues, and federal constitutional challenges to the implementation

27  of federal regulatory schemes. (Opposition, at 12:26.)

28       Significantly, at page 9 of its Opposition ACRF explains, for the first time, its intent in

Defendants Opposition for Motion to Remand and                    [CV07-06058(CRB)]
Request for Attorney's Fees

referencing Section 31, subsection (e) (the "federal grant" exception in Proposition 209) in its

Complaint at Paragraph 9 and 22 as follows:

> Even under Article I, section 31(e), Defendants are required to
> show that it meets all the federal requirements necessary for a
> race-based discriminatory program. This Defendants cannot do.
> Defendants methodology in trying to establish evidence of past
> discrimination fails under the federal requirements, particularly
> those imposed by *Western States*, 407 F.3d 983. In *Western
> States*, the Ninth Circuit struck down Washington State's
> implementation of USDOT's Transportation Equity Act for the
> 21st Century, a 49 C.F.R. part 26 DBE Program. The part 26
> DBE program allows for the use of race- and sex-based
> preferences in federally funded transportation construction
> contracts, after race-neutral alternatives are exhausted. *Western
> States*, 704 F.3d at 987, 990. Just as USDOT's ACDBE
> program under part 23 requires state agencies to set goals for
> DBE airport concession participation, part 26 requires states to
> establish goals for the utilization of DBEs in construction
> contracts. *Western States*, 407 F.3d at 989. The goals are
> established based on evidence of past discrimination. *Id.*

> Although Washington's DBE program had been approved by the
> USDOT, the implementation of race-conscious measures to
> achieve its DBE goal was found unconstitutional in *Western
> States*, because the state had no evidence suggesting that
> minorities suffered discrimination in the state's contracting
> industry. *Id.* at 1002.

Not only was Plaintiff the party to introduce the holding of Western States, it also was the

first to raise U.S. Supreme Court cases addressing the constitutionality of affirmative action

programs, e.g. Adarand Construction, Inc. v. Pena, 515 U.S. 200 (1995) and City of Richmond v.

Croson, 488 U.S. 469 (1989). (Opposition at 2:11, 14-16.)

In Adarand, the court examined the scenario where one or more federal agency contracts

contain a subcontractor compensation clause, which affords contractors a financial incentive to

engage "subcontractors certified as small businesses controlled by socially and economically

disadvantaged individuals". Id. Because it was not a certified business, the petitioner, Adarand

Constructors ("Adarand") lost a subcontract even though it had submitted the low bid. Id. It

subsequently sued federal officials, claiming that the race-based compensation clauses violated its

///

7

1   Fifth Amendment due process rights. Id. at 205-206; 210.[1]

2       In Croson, the City of Richmond determined that 30% of its contracting work should go to

3   minority-owned businesses. The court found that City's actions violated the Equal Protection

4   Clause of the 14th Amendment and instructed that only in extreme cases could cities use racial

5   preferences in contracting to break down patterns of deliberate exclusion and that such remedial

6   action had to be narrowly tailored. 488 U.S. at 509-511.

7       In Western States Paving Co. v. Washington State Dept. of Transportation, 407 F.3d 983

8   (9th Cir. 2005), a non-minority subcontractor sued the state, county and city under 42 USC § 1983

9   over alleged race discrimination in the award of road construction contracts financed by federal

10  transportation funds.  In its suit, plaintiff alleged that such programs violated its equal protection

11  rights. Id. at 987.  There, the court found that although Western States failed in its facial challenge

12  to the Department of Transportation regulations at issue, plaintiff's "as applied" equal protection

13  challenge to the Transportation Equity Act had merit. Id. at 1002-1003.

14      Citing to these three cases in its Opposition, Plaintiff's states, "Defendants reliance on

15  mere statistics is inadequate to justify evidence of past discrimination, and their race-conscious

16  measures are not narrowly tailored".  (Opposition, at 10:16-17.)  Upon such insistence, Plaintiff

17  showed its true hand, which was its claims that the ACDBE Program involved equal protection

18  issues and implicated the constitutionality of the Port's implementation of a federal regulatory

19  scheme.

20      In addition to the federal constitutional claims apparently embedded in paragraphs 9 and

21  22 of its Complaint, in its Opposition, ACRF also suggested that its Complaint seeks to challenge

22  the FAA's approval of the Port's ACDBE Program on constitutional grounds.  (Opposition, at 9,

23

24

25  _____

26  [1]In Adarand, the court found that petitioner was entitled to declaratory relief because it was able to
    establish a real and immediate threat that it would suffer similar injury in the future. By contrast
27  here, and as will be argued in Defendants' Motion to Dismiss which is scheduled for hearing in
    conjunction with the instant remand hearing, Plaintiff cannot establish that members of its
28  association are in peril of concrete and particularized and actual or imminent harm.

Defendants Opposition for Motion to Remand and                    [CV07-06058(CRB)]
Request for Attorney's Fees

fn 3.)[2]   The fact that Defendants demurred that the ACDBE Program was federally mandated (see

Motion for Remand at 6:15-16) in response to a claim that the program was a "municipal

program" did not trigger removal, in that such statements, at best, posed an affirmative defense,

which all parties recognize does not afford grounds for removal under Section 1441(b).  Rather, it

is Plaintiff who framed the federal issues for the first time in its Opposition by reliance on cases

which "necessarily stated a federal issue, actually disputed and substantial, which a federal forum

may entertain." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg, 545 U.S. 308 (2005) and

see Section 1441(b).

The law is clear in this respect that when grounds for removal are not forthcoming from the

Complaint--and even when Defendant suspects grounds for removal--the defendant may wait to

remove until a subsequent pleading clearly discloses removability. Harris, 425 F.3d at 694.  Such

disclosure occurred in the instant matter when plaintiff filed its Opposition on November 26,

2007.  Defendants removed four days later, well within the 30-day window afforded by Section

1441(b) when the initial pleading does not disclose immediate grounds for removal.  As such,

Defendants timely removed this case to federal court.

### B.   DEFENDANTS PROPERLY REMOVED UNDER FEDERAL QUESTION JURISDICTION

As explained above, Plaintiff's Opposition makes clear that Plaintiff's claims necessarily

raise a federal issues which give rise to federal question jurisdiction as set forth in Grable & Sons

Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308. Those cases hold that state law claims

confer federal jurisdiction if they "necessarily raise a stated federal issue, actually disputed and

substantial, which a federal forum may entertain without disturbing any congressionally approved

balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314.  This test "captures

the commonsense notion that a federal court ought to be able to hear claims recognized under state

law that nonetheless turn on substantial questions of federal law, and thus justify resort to the

---

[2]Contrary to Plaintiffs' statement in footnote 3 of its Opposition, Defendants made no argument in its Demurrer papers that the ACDBE program "is constitutional based upon a letter from the FAA."

9

1    experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." Id. at

2    311.

3           Here, Plaintiff premises its claim upon alleged violations of a federal regulation, 49 CFR

4    Part 23, and the U.S. Equal Protection Clause.  The questions of whether a federal agency, the

5    FAA, properly concluded that the Port is in compliance with Part 23 and whether that conclusion

6    triggers federal equal protection clause concerns are actual and substantial disputes at the center of

7    this litigation.  While disguised as a Proposition 209 violation in its Complaint, Plaintiffs'

8    Opposition unequivocally challenges the implementation of a federal scheme. That scheme vests

9    the FAA with the discretion to impose certain affirmative action mandates on airport concession

10   contracts that are distinct and aside from any provision of state constitutional law under

11   Proposition 209.

12         **1. Federal Law Recognizes that State Agency Actions Performed Under Federal**
           **Mandate Present Federal Questions Appropriate for Federal Court Adjudication.**
13

14          Shortly after the motion to remand was filed, counsel for the parties conferred by

15   telephone. The purpose of the December 20, 2007 conference was to clarify the respective legal

16   positions of the parties. (See Declaration of Rosales in Support of Defendants' Oppo. to Motion to

17   Remand, ¶ 4.)  As a result of this conversation, Defendants' counsel understands Plaintiff's

18   position to be that its Prop. 209 violation claim is that the ACDBE program at issue (1) does not

19   comply with the provisions of Part 23 although the FAA has determined otherwise; and, (2) is

20   unconstitutional under the federal equal protection clause because the Port allegedly implemented

21   the program without complying with federal constitutional requirements and therefore the program

22   is not protected under Section 31(e). Thus, ACRF apparently views the FAA's approval of the

23   ACDBE program to be incorrect and invalid under the federal Constitution and Part 23 itself.

24   Accordingly, Plaintiff's position is that the Port's implementation of the FAA-approved ACDBE

25   program is likewise invalid even though the Port acted only upon the FAA's directive. [3]

26   ───────────────

27   [3] In light of Plaintiff's attack on the FAA's interpretation of Part 23 the federal government has a
     significant interest in this particular dispute and is a necessary party to the litigation. Accordingly,
28   Defendants intend to move to dismiss the action on the additional ground that necessary federal
     (footnote continued)

Defendants Opposition for Motion to Remand and          [CV07-06058(CRB)]
Request for Attorney's Fees

1   (Opposition, at 9).  The issue is whether a federal question is presented by these facts. The answer

2   is clearly "yes."

3        That Plaintiff attacks the actions of a federal agency presents further grounds for removal.

4   Federal law dictates that when the United States or any agency thereof or any officer or any

5   "person" "acting under" that officer or agency is sued in an official or individual capacity for any

6   act under color of such office, in state court, the state court action may be removed to federal

7   court.  See 28 USCA § 1442(a)(1).[4]  In a factually analogous case, a federal court found that

8   where a state governmental agency was implementing federal policy pursuant to federal regulation

9   and a federal-state contract, the state entity was an agent of the federal office and the state

10  constitutional challenge against the state agency could be removed to federal court.

11       In Clio Convalescent Center v. Michigan Dept. of Consumer and Industry Services, 66 F.

12  Supp. 2d 875, 877 (E.D. Mich. 1999) the court held that the Michigan Department of Consumer &

13  Industry Services was acting as an agent of a federal agency when it recommended remedies to the

14  Health Care Financing Agency ("HCFA") for the plaintiff nursing home's alleged violations of

15  federal Medicare/Medicaid regulations.  In so doing, the court was persuaded that the Department

16  had applied only required federal protocol in recommending remedies to the HCFA, that no state

17  policy was unaccounted for in a federal regulation and that a relied upon grid and policy bulletin

---

19  parties were not named in the Complaint.

20  [4] In its Notice of Removal, defendants relied on Section 1441.  This case is also removable under
21  28 USC § 1442(a)(1).  A response brief which raises alternative grounds for removal is never
    untimely when it involves the subject matter jurisdiction of the court.  See Gateway Five, LLC v.
22  In re Price, Slip Copy, 2007 WL 4260810 (E.D. Tenn. 2007.  In that subject matter jurisdiction
    involves the court's power to hear a case, it can never be forfeited or waived.  United States v.
23  Cotton, 535 U.S. 625, 630 (2002); accord Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).
24  This is because the courts have an "independent obligation to determine whether subject matter
    jurisdiction exists, even in the absence of a challenge from any party." Arbaugh, 546 U.S. at 514.
25  Here, removal under Section 1442 only sets out more specifically the federal question jurisdiction
    already addressed in Defendants' Notice of Removal under Section 1441and clarifies the basis for
26  federal question jurisdiction in this case.  Alternatively, as applied here, Section 1442(a)(1) is no
    more than a shifting of legal theory and is properly viewed as a clarification of a defective
27  allegation.  See 28 USC, § 1653; National Audobon Soc. v. Dept. Water & Power, 496 F. Supp.
28  499 (D.C. Cal. 1980; Wright & Miller, Federal Practice and Procedure, § 3733.

Defendants Opposition for Motion to Remand and                    [CV07-06058(CRB)]
Request for Attorney's Fees

1   not specifically found in any federal material merely set forth federal requirements.  In that the

2   Department was implementing federal regulations pursuant to its obligation under statutes,

3   regulations, and/or contract, it was acting as HCFA's agent and removal of a state constitutional

4   challenge to federal court was proper under § 1442(a)(1). Id.

5          Similarly, here, pursuant to 49 USC § 47107(e), Part 23 and its federal funding contract

6   with the USDOT/FAA,  the Port is implementing federal regulations pursuant to its federal

7   statutory, regulatory and contractual obligations as determined by the FAA.  The Port's conduct is

8   under color of the authority of the FAA.  Any challenge to the exercise of that federal authority

9   raises a substantial federal question warranting removal to federal court for adjudication by federal

10  judges.

11         Also analogous is Magnin v. Teledyne Continental Motors, 91 F.3d 1424 (11th Cir.

12  1996).  There, a state court action was brought challenging, in part, a defendant's certification of

13  an aircraft's engine as airworthy.  The defendant removed the case to federal court on the grounds

14  that the FAA bestowed on him his certification duties and that he was acting on its behalf, and

15  within its authority when he performed the acts alleged against him in the state action.  In

16  affirming the district court's denial of the plaintiff's remand motion, the court stated at page 1428:

17             Smith's removal petition demonstrates that the exercise of federal
             jurisdiction is proper. At least part of Smith's defense is that he acted
18           within the scope of his federal duties, that what he did was required
             of him by federal law, and that he did all federal law required. That
19           defense raises a federal question, which justifies removal. The extent
             to which federal law imposes certain requirements upon Smith as a
20           DMIR, and whether it may afford him any corresponding protection
             as a DMIR from tort liability, are issues of federal law.
21

22         Here, Plaintiff argues that Part 23 and the federal Constitution impose certain

23  requirements on Defendants which they did not comply with before adopting the ACDBE

24  Program.  In response, Defendants maintain they were directed and mandated to do so by Part 23

25  and the FAA. Without question, as was the case in Magnin, these positions raise substantial

26  federal questions that should be answered by the federal courts.

27  ///

28  ///

12

Defendants Opposition for Motion to Remand and                    [CV07-06058(CRB)]
Request for Attorney's Fees

**2.  Proposition 209, Read as Prohibiting the Port's Compliance with 49 CFR Part 23, is Preempted, and thus Presents a Federal Claim.**

Under Section 1441(b) removal, only a well-pleaded complaint raises issues of federal law.  Toumajian v. Frailey, 135 F.3d 648, 653 (9th Cir.1998). A corollary to the well-pleaded complaint rule, and one that gives it content is the doctrine of complete preemption.  That doctrine provides that, in some cases, "the preemptive force of [federal statutes] is so strong that they completely preempt an area of state law. In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Ansley v. Ameriquest Mortg. Co., 340 F.3d 858, 862 (9th Cir. 2003).

The test for complete preemption "is whether Congress clearly manifested an intent to convert state law claims into federal-question claims." Ansley v. Ameriquest Mortg. Co., 340 F.3d at 862. Complete preemption occurs only when Congress intends not to merely preempt a certain amount of state law, but also intends to transfer jurisdiction of the subject matter from a state forum to a federal forum. See, Id.  Undisputedly, here, 49 USCA § 47107(e), together with Part 23, is the federal law governing disadvantaged business enterprise participation in airport concession contracts across the United States.  The consistent and uniform safeguarding of ACDBE participation at such airports falls squarely within the federal government's supreme sphere of action.  Plaintiff's interpretation of Proposition 209 renders it insignificant conflict with Part 23.  Consequently, Prop. 209 must give way to federal preemption.

Pursuant to 49 USC § 47107(e)(l), Congress articulates its intent:

> The Secretary of Transportation may approve a project grant application . . . for an airport development project only if the Secretary of Transportation receives written assurances, satisfactory to the Secretary, that the airport owner or operator will take necessary action to ensure, to the maximum extent practicable, that at least 10 percent of all businesses at the airport selling consumer products or providing consumer services to the public are small business concerns (as defined by regulations of the Secretary) owned and controlled by a socially and economically disadvantaged individual (as defined in Section 47113(a) of this title) . . ..

Section 23.77 of Part 23 explains that, as a condition of remaining eligible to receive federal monies, a federal grant recipient must follow the provisions of Part 23 and, that, to the

13

extent any State law, regulation or policy relating to ACDBE programs conflicts with Part 23, those State laws, regulations or policies are preempted by Part 23:

> (a) In the event that a State or local law, regulation, or policy *differs from the requirements of this part, the recipient must, as a condition of remaining eligible to receive Federal financial assistance from the DOT, take such steps as may be necessary to comply with the requirements of this part . . ..*
> (e) However, nothing in this part preempts any State or local law, regulation, or policy enacted by the governing body of a recipient, or the authority of any State or local government or recipient to adopt or enforce any law, regulation, or policy *relating to ACDBEs, as long as the law, regulation, or policy does not conflict with this part.*

(Emphasis added.)

Thus, although implemented at the local level, the Port's ACDBE Program derives from Congressional intent that federal affirmative action goals be realized as set forth in 49 USC § 47107(e)(l) and 49 CFR Part 23. As interpreted by ACRF, Proposition 209 directly conflicts with Section 23.25(e) of Part 23 because the federal regulation <u>requires</u> airports to use race-conscious measures where race-neutral measures alone are not projected to be sufficient to meet ACDBE goals whereas, Proposition 209 prohibits such measures.[5] The second prong of the complete preemption doctrine is also satisfied here: Congress, through the USDOT, has provided a federal avenue for complaints such as Plaintiff's.[6] Consequently, pursuant to <u>Ansley v. Ameriquest Mortg.</u>

_____

[5] Part 23, Section 23.25 (e) tells airport sponsors: "Your ACDBE program must also provide for the use of race-conscious measures when race-neutral measures, standing alone, are not projected to be sufficient to meet an overall goal." See also Part 23, Preamble, Section 23.1 "*What are the Objectives of This Part?*. . . Race-conscious methods continue to be a necessary part of a narrowly tailored strategy to ensure nondiscrimination in concessions." See Exh.10 of Request for Judicial Notice ("RJN") filed concurrently herewith in support of Defendants' Motion to Dismiss. In that the RJN is lengty, Defendants incorporate by reference that RJN as though set forth fully herein in support of Defendants' Opposition to Motion for Remand. All references to exhibits are part of the RJN filed in support of the Motion to Dismiss which is set for hearing in the instant court on the same date as the hearing on Plaintiff's Remand Motion.

[6] 49 CFR Parts 23 and 26 provide detailed administrative remedies. The proper avenue available to ACRF is under Section 23.11 of Part 23. That section explains that the compliance and enforcement provisions of 49 CFR Part 26, Sections 26.101, 26.105 and 26.107 apply to Part 23 in the same way that they apply to FAA grant recipients and programs under Part 26. According to the language set forth under Part 26.105 (c) "[a]ny person who knows of a violation of this part by (footnote continued)

14

Co., 340 F.3d at 862, Plaintiff's Prop. 209 claim is in fact a preempted federal claim arising under federal law.

### C.    PLAINTIFF'S LACK OF ARTICLE III STANDING DOES NOT DEFEAT REMOVAL BASED UPON FEDERAL QUESTIONS

Plaintiff concedes it lacks standing to bring a federal claim, then argues this means that the Court must remand its federal claim for adjudication by a state court.  Nonsense.

Plaintiff accurately references section 1447(c)'s language providing that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  Plaintiff errs, however, when it equates a lack of standing to bring a federal claim with "the district court lack[ing] subject matter jurisdiction."  As demonstrated above, this Court has subject matter jurisdiction over ACRF's claim because the claim "arises under the Constitution, [and] laws . . . of the United States."  See 28 U.S.C., §1331.  In other words, ACRF seeks adjudication of substantial federal questions over which this Court has subject matter jurisdiction.  If ACRF is not the proper party to bring the challenge, then other jurisdictional or prudential concerns may weigh against adjudication of the challenge in this case; but that is not the same as the court lacking subject matter jurisdiction.

That Article III standing has nothing to do with the federal-question subject matter jurisdiction is manifest in the very different considerations underlying the two jurisdictional doctrines. See <u>Lee v. American Nat'l Ins. Co.</u>, 260 F.3d 997, 1005 (9th Cir. 2001) (applying similar analysis in interpreting section 1447(c).  "The primary policy for investing the federal district courts with jurisdiction in respect to actions arising under the constitution, laws or treaties of the United States, was to insure the availability of a forum designed to minimize the danger of hostility towards, and specially suited to the vindication of, federally created rights." <u>Paduano v. Yamashita Kisen Kabushiki Kaisha</u>, 221 F.2d 615, 618 (2d Cir. 1955); see also <u>Hunter v. United Van Lines</u>, 746 F.2d 635 (9th Cir. 1984) (principal purpose of federal question jurisdiction is to

a recipient of FAA funds may file a complaint under 14 CFR Part 16 with the Federal Aviation Administration Office of Chief Counsel."

1    afford a sympathetic and knowledgeable forum for the vindication of federal rights).  "The

2    standing doctrine, on the other hand, derives from the interests in ensuring that parties have the

3    proper incentives to litigate cases as vigorously as they can and in avoiding adjudication of

4    generalized grievances that are better resolved through the legislative process."  Lee, 260 F.3d at

5    1005, citing Valley Forge Christian College v. Americans United for Separation of Church &

6    State, Inc., 454 U.S. 464, 471-76 (1982).  ACRF's standing problem simply does not implicate the

7    question of whether ACRF's challenge is essentially a federal claim that, upon election of a party,

8    is best adjudicated, if at all, in federal court.[7]

9         In support of its contrary position, Plaintiff cites several cases (Motion, at 9-10.)  But

10   those cases deal with section 1447(c) remands of *state-law claims*.  Plaintiff has identified no

11   authority -- and Defendants are unaware of any authority -- that would support the proposition that

12   a federal claim must be remanded for adjudication by a state court simply because plaintiff's

13   counsel was savvy enough to bring the case in the name of a party that lacked constitutional and

14   prudential standing.  Such a holding in this case would run contrary to fundamental principles of

15   federal jurisdiction, i.e., that every diligent party against whom a federal claim is alleged is

16   entitled to a federal forum for adjudication of that claim.  Where, as here, the party bringing a

17   federal claim lacks standing, the claim should be dismissed, not remanded.

18                    **D.  REMAND TO STATE COURT IS FUTILE**

19        One of ACRF's central arguments is that remand is appropriate because it lacks Article

20   III standing but has standing in state court on California taxpayer and citizen standing rules.

21   (Motion, at 7: 19-22.)  Implicit in such argument is an assumption that remand to state court would

22   not be futile.  Plaintiff is simply wrong.

23   _____

24   [7]Plaintiff inaptly relies on ERISA cases to argue that standing and subject matter jurisdiction
     essentially merge and that lack of standing denies the federal court of subject matter jurisdiction.
25   (See, e.g., Curtis v. Nevada Bonding Corp., 53 F.3d 1023 (9th Cir. 1995).  ERISA poses a statutory
     scheme which affords the federal court subject matter jurisdiction only if a plaintiff's employment
26   is subject to that scheme.  In Curtis, the court concluded that ERISA did not and would not cover
     plaintiff's employment so federal preemption was not triggered.  By contrast here, the federal
27   questions raised by ACRF, if only begrudgingly, remain whether or not Plaintiff has standing.
     Subject matter jurisdiction and standing, as discussed above, require discrete analysis and cannot
28   be morphed one into the other under the facts of the instant case.

                                   16

1    In <u>Bell v. City of Kellogg</u>, 922 F.2d 1418, 1424-25 the Ninth Circuit adopted a futility

2  exception to the remand provisions of 28 USC § 1447. After the district court held that plaintiffs

3  lacked standing to challenge the federal aspects of the case, the district court dismissed the entire

4  case, rather than remand certain pendant state claims. The Ninth Circuit approved this procedure,

5  holding that "[w]here the remand to state court would be futile, the desire to have state courts

6  resolve state law issues is lacking" and such remands would be inappropriate because "no comity

7  concerns are involved." 922 F.2d at 1424-25.  The "futility exception" allows the district court to

8  efficiently resolve the entire case and prevent further waste of valuable judicial time and

9  resources. <u>Id</u>. There are several reasons why a remand to state court in the instant case would, in

10  fact, be futile.

11    First, as discussed at length above at pages 9 to 12, Plaintiff does not have any viable state

12  claim. The claim of a violation of Proposition 209 rests entirely on federal questions. In fact,

13  Proposition 209, as interpreted by ACRF, is preempted by Part 23.  Accordingly, it is in fact a

14  federal claim from its inception in state court.

15    Second, Plaintiff does not have taxpayer or citizen suit standing in state court.

16    **1. State Taxpayer Standing**

17    In California, a taxpayer suit may be brought to redress an illegal or wasteful expenditure

18  of public funds or damage to public property, so long as the action involves an actual or threatened

19  expenditure of public funds.  See Cal. Code Civ. Proc. § 526a; <u>Humane Soc. of U.S v. State Bd. of</u>

20  <u>Equalization</u>, 152 Cal.App.4th 349, 361 (2007).  Such suit, however, is not generally appropriate

21  for primarily political issues or issues implicating the exercise of discretion of either the legislative

22  or executive branches of government. <u>Humane Soc. of U.S.</u>, 152 Cal.App.4th at 356.  Thus,

23  although ACRF alleges that the City and the Port continue to spend local and state monies to

24  implement and administer the ACDBE Program (Complaint, ¶¶ 3-4), such assertions are baseless.

25  It is indisputable that there were no expenditures or threatened expenditures of public tax funds by

26  the Port for any purpose, including the adoption and implementation of the ACDBE Program.

27  The Port is an independent agency under the Oakland City Charter with its own legislative body

28  and its receives no City tax revenues to implement its policies, including the implementation of

17

1    the Port's ACDBE Program.

2        Indeed, the City's budgetary documents for the relevant time frame undeniably show, the

3    City has not provided *any* tax money to the Port in the fiscal years at issue.  (RJN, Exhs. 3, 4, 6 &

4    7.)  Similarly, no tax money is spent on implementing the ACDBE Program at issue.  Hence, there

5    is no "actual or threatened expenditure of public funds" that could confer standing upon Plaintiff

6    even in state court.

7        In a factually analogous case, the Court held the plaintiff did not have standing to attack

8    the constitutionality of a local agency's federal affirmative action program.  In <u>Cornelius v.</u>

9    <u>Los Angeles Metropolitan Transp. Authority</u>, 49 Cal.App.4th 1761 (1996) a suit was brought by a

10   licensed engineer who worked for a subcontractor who lost a contract award because the

11   subcontractor did not comply with the local agency's race based federal affirmative action

12   program.  The program was mandated by the USDOT and applied by the Los Angeles County

13   Metropolitan Transportation Authority ("MTA").  Plaintiff alleged he had taxpayer standing

14   pursuant to Code Civ. Proc. Section 526a to bring the action.  On review, the court disagreed

15   because he was not a resident of the county, and he had not paid taxes to the county.

16   Consequently, there was no connection between his tax payments and a threatened or actual illegal

17   expenditure of public funds. <u>Id</u>. at 1774-1775.

18       The is absolutely no evidence that the City and the Port are acting illegally.  No tax money

19   is received by the Port from the City, and so no tax monies support or finance the implementation

20   and administration of the ACDBE Program as alleged in Plaintiff's Complaint.  Like the plaintiff

21   in <u>Cornelius</u>, Plaintiff here lacks standing to bring a taxpayer's suit because no   nexus exists

22   between Plaintiff's tax payments and financial support for the challenged Program.

23       Moreover, although ACRF contends that at least one of its members has paid California

24   income tax and that state monies are used to support and finance the ACDBE Program

25   (Complaint, ¶ 2), payment of state taxes alone does not confer taxpayer standing.  As in <u>Cornelius</u>,

26   there are three factors that argue against expanding statutory taxpayer standing to include the

27   payment of state taxes:

28           The first factor is the tangential relationship between the taxes paid
             and the policy being contested. State income taxes constitute only a

---

18

*partial and indirect* source of funding for the MTA. State money provides only 15 percent of the MTA's funding.

The second factor is the ramification of finding standing [here]. If we were to conclude that the mere payment of state income taxes conferred standing, then any state implemented program which to any degree is directly or indirectly financed by the state income tax could be subject to a legal challenge by any resident in any of our state's 58 counties as long as the resident pays state income taxes. We do not believe it would be sound public policy to permit the haphazard initiation of lawsuits against local public agencies based only on the payment of state income taxes.

The third factor is the policy behind conferring taxpayer standing under Code of Civil Procedure section 526a. Our Supreme Court has stated that while standing under that section is to be construed liberally . . . this is to allow a challenge to governmental action which would otherwise go unchallenged because of the stricter requirement of standing imposed by case law. *(*Blair v. Pitchess, supra*, 5 Cal.3d at p. 268.)* We have given careful and serious consideration to Cornelius's argument that he should be accorded standing because of the significant constitutional issues raised by his action but conclude, nonetheless, that a decision not to grant standing to him does not necessarily result in the DBE program remaining unchallenged.

Cornelius, 49 Cal.App.4th at 1778-1779.

Here, the case for denying ACRF standing is stronger than it was for the plaintiff in Cornelius. Unlike MTA, the Port does not receive *any* state tax monies and thus there is not even a "tangential relationship between the taxes paid and the policy being contested." Cornelius, 49 Cal.App.4th at 1778-1779. In sum, ACRF does not meet the requirements to establish taxpayer standing pursuant to Cal. Code Civ. Proc. Section 526a.

**2. State Citizen Suit Standing**

Plaintiff's also lacks standing under the "citizen suit" theory outlined in Connerly v. State Personnel Bd., 92 Cal.App.4th 16, 29, (2001) under which a citizen may seek affirmative relief to compel the performance of a public duty. (See Complaint, ¶¶ 3-4.)   Under this theory, Plaintiff must generally: (1) be a natural born citizen and request relief under a petition for a writ of mandamus to compel the performance of a public duty; and (2) demonstrate a "beneficial interest" in the performance of the public agency's public duty. Waste Management of Alameda County,

19

1   Inc. v. County of Alameda, 79 Cal.App.4th 1223, 1232-1239. ACRF does not meet this test.

2          To begin, plaintiff is a corporation, not a natural born citizen for purposes of a citizen suit.

3   Further, to establish standing under a citizen suit theory, a plaintiff's ordinary recourse is through

4   a writ of mandate, not a complaint for injunctive and declaratory relief. See Waste Management,

5   79 Cal.App.4th at 1232.   To prevail on such a writ, a petitioner must state facts which

6   demonstrate it has a "beneficial interest" in the performance of a "public duty" by the defendant.

7   Id. at 1232, 1236-1237.

8          Even were its Complaint construed as a writ of mandate, Plaintiff cannot establish a

9   "beneficial interest" in the performance of any "public duty" by Defendants for two reasons.  First,

10  mandamus relief must be directed at a ministerial duty that is required to be performed by a public

11  official or board, not a public entity. Transdyn v. City and County of San Francisco, 72

12  Cal.App.4th 746, 750-751 (1999).  Here, Plaintiff names the Port as a defendant, not any officer

13  thereof or the Board itself.  Second, the general rule of law is that mandamus is not available to

14  enforce the contractual obligations of a government body. McDonald v. Stockton Metropolitan

15  Transit District, 36 Cal.App.3d 436, 442 (1973); see also Waste Management, 79 Cal.App.4th at

16  1237 referring to this case ["the court rejected a citizen's suit because the action would have

17  intruded upon the remedial discretion of a public agency …."].)  Here, the ACDBE Program arises

18  out of a contractual condition (49 CFR Part 23) contained in the federal grant funding agreements

19  between the Port and the USDOT/FAA. (RJN, Exs. 12-14; Chapters 1 and 2, Ex. 8; see also City

20  and County of San Francisco v. Western Air Lines, Inc., 204 Cal.App.2d 105, 120 (1962)

21  (language of the federal grant agreement between San Francisco International Airport and the

22  federal government is simply and entirely a financial arrangement between two parties, the United

23  States and the City.)

24          In Stockton Metropolitan Transit District, petitioners, members of the public who were bus

25  service users, sought to compel a transit district to provide federally funded bus stop shelters as

26  part of a contract between the district and the USDOT.  The district had not completed the

27  improvements due to a federal-local disagreement over their design. Id. at 438.  In denying relief,

28  the court found that petitioners were at best "indirect beneficiaries of a grant whose primary

Defendants Opposition for Motion to Remand and                    [CV07-06058(CRB)]
Request for Attorney's Fees

1  obligee, the [federal] government is quite able to protect its own interests." Id. at 443.   As such,

2  petitioners could not demonstrate the requisite "beneficial interest" necessary to justify a writ of

3  mandate against the transit district.

4      ACRF has even less of a "beneficial interest" in the federal grant agreements between the

5  Port and the USDOT/FAA than did the petitioners in Stockton Metropolitan Transit District in the

6  federal grant agreement at issue in that case.  There, the petitioners were directly affected by

7  failure to fund the desired improvements and the local agency had *not* complied with a contractual

8  promise.  Here, neither ACRF nor its members are airport customers, users or actual or potential

9  concessionaire contractors. Moreover, the Port *has satisfied* its contractual promises.  ACRF

10 members are merely taking issue with federal affirmative action policy embodied in federal grant

11 agreements and are seeking to change the contractual conditions the FAA, in its discretion and

12 authority, has imposed on federally assisted U.S. airports, including Oakland International Airport.

13 Neither the Port nor ACRF can compel the federal government to waive or change the statutory

14 and regulatory mandate that federally assisted airports implement an ACDBE policy.

15      If mandamus relief is not available to a citizen to *enforce* the contractual obligations of a

16 public body, by logical extension, it is not appropriate to allow mandamus for a citizen who wants

17 to intrude in a federal-local contract to *prevent* a local agency's compliance with the federal

18 government's contractual conditions. In sum, ACRF does not and cannot state any cause of action

19 for a citizen's suit under California law.

20      Third, Plaintiff's claim of a state constitutional violation rests on its ability to successfully

21 challenge the FAA's approval of the ACDBE Program in state (or federal) court. This Plaintiff

22 cannot do.  The rule of law is clear: no private right of action exists under the Airport and Airway

23 Improvement Act (AAIA), 49 USC Section 47107 et. seq., to challenge a violation or seek

24 enforcement of one of the Act's provisions. See Four T's Inc. v. Little Rock Municipal Airport,

25 108 F.3d 909, 915 (8th Cir. 1997) reviewing the decisions of several circuits and agreeing that "the

26 AAIA lacked language that 'could run in favor of private plaintiffs'; and the AAIA's enforcement

27 scheme did not suggest Congress intended to create a private right of action.".)  The ACDBE

28 Program is a product of the FAA's determination of the Port's compliance with 49 CFR Part 23,

21

1   the regulatory scheme implementing 49 USC Section 47107 (e) of the AAIA.  The Plaintiff's Prop.

2   209 action is based on an interpretation of Part 23 which is obviously different than the FAA's

3   interpretation.  However, the USDOT/FAA are the parties that have exclusive jurisdiction to

4   decide whether the Port is in compliance with Part 23's requirements.

5          Plaintiff, of course, is not without a remedy.  If ACRF disagrees with how the FAA has

6   exercised its discretion concerning the Port's compliance with Part 23, it can file an administrative

7   complaint with the FAA.[8]  What it cannot do is state a cause of action against the FAA or against

8   the Port for following the FAA's directive as to a grant condition.

9          Last, Plaintiff's Prop. 209 claim is barred by the one year statute of limitations applicable

10  to facial challenges.  As set forth in the Motion to Dismiss in this Court, a facial challenge to a

11  statute or ordinance accrues when it is adopted and the statute of limitations for an alleged

12  infringement of constitutional rights is one year. Coral Construction, Inc. v. City and County of

13  San Francisco, et al., 116 Cal.App.4th 6, 26-27 (2004).  As plead in its Complaint, ACRF

14  apparently views the Port's adoption of a resolution approving the ACDBE Program and

15  authorizing the Port's Executive Director to submit the program to the FAA for final approval as a

16  legislative act subject to a facial constitutional attack.  The Complaint alleges that "[o]n February

17  23, 2006, the Port adopted the ACDBE Program." (Complaint, ¶ 10.)  Therefore, for the

18  Complaint to be timely, ACRF would have had to bring its facial challenge to the ACDBE

19  Program within one year of this date or approximately February 23, 2007. ACRF failed to do so.

20  Even assuming that the operative date for the one-year statute of limitations to run was one year

21  from the date the FAA approved the Program, or March 24, 2006, the facial challenge is still too

22  late -- ACRF filed its Complaint on July 6, 2007, well over a year later.  Accordingly, Plaintiff's

23  state constitutional challenge to the Complaint in its entirety is barred as a matter of law.

24                          **E.  PLAINTIFF IS NOT ENTITLED TO ATTORNEY'S FEES**

25         Plaintiff claims that Defendants' removal of the case to federal court was improper and

26  thus the Court should exercise its discretion and award Plaintiff "its costs, including reasonable

27  _____

28  [8]See footnote 6.

Defendants Opposition for Motion to Remand and                    [CV07-06058(CRB)]
Request for Attorney's Fees

1   attorneys' fees." (Motion, at 10: 26-27.) Defendants' removal was timely and appropriate. Thus,

2   Plaintiff's request for attorney's fees should be denied.

3   While "[a]n order remanding the case may require payment of just costs and any actual

4   expenses, including attorney fees, incurred as a result of the removal," the Supreme Court in

5   <u>Martin v. Franklin Capital Corp</u>. 546 U.S. 132 (2005) stated that "the standard for awarding fees

6   should turn on the reasonableness of the removal . . .. [A]bsent unusual circumstances, courts may

7   award attorney's fees under §1447(c) only where the removing party lacked an objectively

8   reasonable basis for seeking removal. Conversely, where an objectively reasonable basis exists,

9   fees should be denied." <u>Id.</u> at 141.

10   The Supreme Court explained the purpose of the statute as follows, "[B]y enacting the

11   removal statute, Congress granted a right to a federal forum to a limited class of state-court

12   defendants.  If fee shifting were automatic, defendants might chose to exercise this right only in

13   cases where the right to remove was obvious." <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. at 140.

14   The Court also stated, "the appropriate test for awarding fees under §1447(c) should recognize the

15   desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the

16   opposing party, while not undermining Congress' basic decision to afford defendants a right to

17   remove as a general matter, when the statutory criteria are satisfied. <u>Id.</u> at 141.

18   Here, Defendants have satisfied the statutory criteria and have no improper purpose for

19   seeking removal. Accordingly, Plaintiff is not entitled to costs and attorney's fees.[9]

20   _____

21   [9] Notwithstanding this position, it is noteworthy that Mr. Joshua P. Thompson, one of Plaintiff's

22   attorneys, has misstated facts regarding his standing to recover attorneys fees as a member
     admitted to practice before this Court. The local rules state that "only members of the bar of this

23   Court may practice in this Court" i.e. "active members [who are] in good standing of the bar of
     this Court prior to the effective date of these local rules and those attorneys who are admitted to

24   membership after the effective date." (U.S. Dist. Ct., Local Civ. Rules, Northern Dist. Cal., rule
     11-1(a).) Sanctions may be imposed for unauthorized practice. (U.S. Dist. Ct., Local Civ. Rules,

25   Northern Dist. Cal., rule 11-8.)

26   In his declaration, Mr. Thompson states, "[a]s an attorney in this case, I recorded 71.90 hours
     in researching and drafting the motion to remand and supporting documents as of December 13,

27   2007." (Decl. of Joshua P. Thompson, ¶ 6)  However, Mr. Thompson was not admitted to practice
     in the Northern District of California until December 11, 2007. (Declaration of Rosales, ¶ 8.)

28   Since it is impossible for Mr. Thompson to have "recorded 71.90 hours" between December 11,
     (footnote continued)

Defendants Opposition for Motion to Remand and          [CV07-06058(CRB)]
Request for Attorney's Fees

1    **IV.        CONCLUSION**

2        For all the foregoing reasons, the Court should deny Plaintiff's Motion to Remand.

3
Dated: January 4, 2008                    Respectfully submitted,
4
                                    MEYERS, NAVE, RIBACK, SILVER & WILSON
5

6
                        By:  _____/s/_____
7
                            Mara E. Rosales
8                           Attorneys for Defendants
                            CITY OF OAKLAND and
9                           PORT OF OAKLAND

10
1043012.2
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27   2007 and December 13, 2007, Plaintiff is attempting to recover attorney's fees for Mr. Thompson
     before his admittance to practice before this Court.
28

24

Defendants Opposition for Motion to Remand and                    [CV07-06058(CRB)]
Request for Attorney's Fees